IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

MICHELLE RIGDON, individually, )
and as Widow and Next of Kin of )
GREG RIGDON, deceased, )
 )
            Plaintiff, )
 )
v. ) Case No. 16-CV-81-GKF-FHM
 )
FLOWSERVE CORPORATION, *et al.*, )
 )
           Defendants. )

**OPINION AND ORDER**

    Before the court is the plaintiffs' Motion for Partial Summary Judgment [Doc. No. 108]. For the reasons set forth below, the motion is denied.

**I. Background**

    This dispute arises from an explosion at an oil refinery in Coffeyville, Kansas on July 29, 2014. That refinery—Coffeyville Resources Refining & Marketing, LLC ("CRRM")—is an operating subsidiary of defendant CVR Refining L.P. ("CVR Refining") and indirectly owned subsidiary of defendant CVR Energy, Inc. ("CVR Energy") (collectively, "the CVR defendants"). [Doc. No. 108-5, p. 2]; [Doc. No. 142-2]; [Doc. No. 142, p. 10, ¶ 5] (noting "CVR Energy owns 66% of CVR Refining"). On December 31, 2012, CVR Energy executed a Services Agreement to provide subsidiaries—including CRRM—certain services, including safety advice and asset management. [Doc. No. 108-7, p. 31].

    Plaintiffs argue the Services Agreement created a duty on the part of CVR Energy to provide a safe working environment for CRRM employees. Specifically, plaintiffs contend the CVR defendants assumed responsibility for pump P-2217—whose seal failure triggered the

explosion in this case. The CVR defendants dispute that characterization, arguing plaintiffs misread and lack standing under the Services Agreement.

## II. Legal Standard

Summary judgment shall be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence permits a rational trier of fact to resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 670 (10th Cir. 1998). A fact is "material" if it is essential to the outcome of the case. *Id.* On review, a court must examine the record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). "In contract actions, the interpretation of a written agreement is a question of fact." *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1214 (10th Cir. 2009) (citing *Gomez v. Am. Elec. Power Serv. Corp.*, 726 F.2d 649, 651 (10th Cir. 1984)). And "'in an ambiguous contract, if the intent of the parties is disputed, a genuine issue of material fact exists which cannot be determined summarily by the court.'" *See Ultra Clean Holdings, Inc. v. TFG-Cal., L.P.*, 534 Fed. App'x 776, 780 (10th Cir. 2013) (quoting *Gomez*, 726 F.2d at 651).

## III. Analysis

Under Kansas law, an employer owes a non-delegable duty to provide employees a safe workplace. *See Allen v. Shell Petroleum Corp.*, 68 P.2d 651, 657 (Kan. 1937); *accord Howard v. TMW Enter., Inc.*, 1998 WL 404358, at *2 (D. Kan. July 8, 1998). To that end, a corporation is not responsible for the working conditions of a subsidiary's employees solely on the basis of a parent-subsidiary relationship. *See Smith v. Atl. Richfield Co.*, 814 F.2d 1481, 1488 (10th Cir. 1987); *Malkiewicz v. R.R. Donnelly & Sons Co.*, 703 F. Supp. 49, 51 (W.D. Tenn. 1989);

*AgriStor Leasing v. Meuli*, 634 F.Supp. 1208, 1213 (D. Kan. 1986) ("The law in Kansas is that a holding or parent corporation has a separate corporate existence and is treated separately from its subsidiary in the absence of circumstances justifying disregard of the corporate entity.").

An entity that voluntarily "undertakes to improve safety for [ ] workers," however, "becomes potentially liable under § 324A" of the Restatement (Second) of Torts. *See Malkiewicz*, 703 F. Supp. At 51; *Schmeck v. City of Shawnee*, 651 P.2d 585, 597 (Kan. 1982) (adopting theory of liability espoused in Restatement (Second) of Torts § 324A). "Neither mere concern with nor minimal contact about safety matters" will suffice. *See Muniz v. Nat'l Can Corp.*, 737 F.2d 145, 148 (1st Cir. 1984). Instead, to be held liable, a parent company must take affirmative action to provide a safe working environment at a subsidiary. *See id.* Such liability "might originate in a contractual duty." *See First Nat'l Bank of Camden, Ark. v. Tracor, Inc.*, 851 F.2d 212, 214 (8th Cir. 1988); *see also Ingram v. Howard-Needles-Tammen & Bergendoff*, 672 P.2d 1083, 1088 (Kan. 1983); *Johnson v. Bd. of Cty. Com'rs of Pratt Cty.*, 913 P.2d 119, 130 (Kan. 1996).

Here, CVR Energy contracted to provide safety advice to CRRM. By its plain terms, the Services Agreement was made "for the benefit" of certain refining subsidiaries, including CRRM. [Doc. No. 108-7, p. 1]. Specifically, CVR Energy agreed "to provide certain services necessary to operate the business conducted by the" refining subsidiaries, including safety advice, management of "day-to-day business," "compliance with applicable law," and asset management. [*Id.* at 1, 31]. In filings with the SEC, CVR Refining described the Agreement as obligating CVR Energy to "conduct a substantial portion of its day-to-day business operations, including the management of "the property of its operating subsidiaries in the ordinary course of business" and "providing safety and environmental advice." [Doc. No. 108-8, p. 3]. Such

services were required to conform to applicable laws and industry standards. [Doc. No. 108-7, p. 5] ("The Services shall be provided in accordance with . . . applicable material Governmental Approvals and Laws . . . [and] applicable industry standards."). And in return, CVR Energy received $13.6 million in 2013 and 2014. [Doc. No. 108-8, p. 4].

The CVR defendants respond that: (1) plaintiffs lack standing to enforce the Services Agreement; and (2) the Agreement is a cost-allocation mechanism, not a safety services contract. The court considers each argument in turn.

### A. Standing

The CVR defendants argue that plaintiffs lack standing to assert claims under the Services Agreement. That argument elides the distinction between contract and tort law. "'A party to a contract. . . may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby.'" *See Lowrimore v. Severn Trent Envt'l Servs., Inc.*, No. CIV-15-475-RAW, 2016 WL 2858822, at *2 (E.D. Okla. May 16, 2016) (quoting *Furlan v. Schinder Elevator Corp.*, 516 Fed. App'x 201, 208 (3d Cir. 2013)). In other words, when a parent corporation undertakes a duty owing directly to third parties, Kansas tort law separately requires performance of that duty with reasonable care. *Spires v. Hospital Corp. of Am.*, 289 F. App'x 269, 272 (10th Cir. 2008); *see also Cunningham v. Braum's Ice Cream & Dairy Stores*, 80 P.3d 35, 40–41 (Kan. 2003); *Chadwell v. Clements*, 847 P.2d 1344, 1349 (Kan. Ct. App. 1993) ("§ 324A applies to injuries to third parties."); Restatement (Second) of Torts § 324A cmt. c ("If the actor's negligent performance of his undertaking results in increasing harm to a third person, the fact he is acting under a contract . . . with another will not prevent his liability to the third person. Clause (b) finds common application in cases of the negligent performance of their

duties by employees or independent contractors, which creates or increases a risk of harm to third persons.").

Here, plaintiffs' causes of action sound in tort, not contract. Thus, the argument that plaintiffs were not parties to the Services Agreement "must fail because [§] 324A tort duties are obligations imposed apart from any manifested intention of the parties to a contract and arise by operation of law, separate and distinct from contractually created duties." *See Howell v. Hartford Steam Boiler Inspection & Ins. Co.*, 991 F.2d 795 (Table) (6th Cir. 1993) (unpublished) (quotations and citation omitted); *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1270 (6th Cir. 1988); *see also Gaudreault v. Elite Line Servs., LLC*, 22 F. Supp. 3d 966, 974–75 (D. Minn. 2014) (explaining that the duty to third parties recognized in §324A is "separate from any liability in contract [defendant] may or may not have to [the party with whom the defendant contracted]"); *Steinbacher v. Diversified Maintenance Systems, Inc.*, No. 1:10-cv-2322, 2012 WL 5875547, at *3 (M.D. Pa. Nov. 20, 2012) ("Whereas breach of contract actions arise from breaches of duties imposed by contract, tort actions arise from breaches of duties imposed by law as a matter of social policy.").

Caselaw cited by the CVR defendants is not to the contrary. Indeed, each of those cases involved a breach of contract action, as opposed to a tort action under §324A. *See Cline v. Peterson*, 381 P.3d 516 (Table) (Kan. Ct. App. 2016) (involving third-party beneficiary contract claim); *Rigby v. Clinical Reference Lab., Inc.*, 995 F.Supp. 1217, 1226 (D. Kan. 1998) (same); *In re Shelving*, 97 P.3d 1036, 1042 (Kan. 2004) (same); *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1329 (10th Cir. 2014) (same); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F.Supp.2d 183, 191 (M.D. Pa. 2005) (same); *Cities Serv. Co. v. Gulf Oil Corp.*, 797 P.2d 1009, 1012 (Okla. Ct. App. 1990) (same); *Ohio Sav. Bank v. Manhattan Mortg. Co., Inc.*,

5

455 F.Supp.2d 247, 251 (S.D.N.Y. 2006) (same); *McKesson HBOC, Inc. v. N.Y. State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1092 (9th Cir. 2003) (same); *Lucent Technologies, Inc. v. Gateway, Inc.*, No. 02-2060-B (CAB), 2007 WL 2900484, at *11–12 (S.D. Cal. Oct. 1, 2007) (same); *Gov't Emps. Ins. Co. v. Andujar*, 773 F.Supp. 282, 288–89 (D. Kan. 1991) (same); *In re Brooke Corp.*, 470 B.R. 594, 605 (Bankr. D. Kan. 2012) (same); *Gorsuch Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 830 F.Supp.2d (D. Colo. 2011) (same); *Stockman v. Unified Gov't of Wyandotte Cty./Kansas City, Kan.*, 6 P.3d 900, 909 (Kan. Ct. App. 2000) (same); *Balboa v. Hawaii Care & Cleaning, Inc.*, 105 F.Supp.3d 1165, 1171–72 (D. Haw. 2015) (same).[1]

Nor does the Agreement's exculpatory clause change the result. Exculpatory contracts "are not favored by the law and . . . are strictly construed." *See Cason v. Geis Irr. Co. of Kan., Inc.*, 507 P.2d 295, 299 (Kan. 1973). "If an exculpatory clause is not clear, definite, and unambiguous, it does not, as a matter of law, release the designated party from his own acts of negligence." *See Graham v. Chicago R.I. & P. Ry. Co.*, 431 F.Supp. 444, 448 (W.D. Okla. 1976). In this case, the Services Agreement limits liability in connection with losses "suffered by the *Service Recipients*," not potential third parties. [Doc. No. 108-7, p. 18] (emphasis added). Thus, the plain text of the exculpatory clause "applies only to" losses suffered by refining subsidiaries, whether in contract or in tort. *See Scott & Fetzer Co. v. Montgomery Ward & Co.*, 493 N.E.2d 1022, 1028 (Ill. 1986).

That is unsurprising. As a general matter, "[w]hile a party can ordinarily contract out his duty to exercise reasonable care with respect to another contracting party via a simple exculpatory provision, a party cannot contract out his duty to exercise reasonable care with

---

[1] Other caselaw cited by the CVR defendants is also inapposite. *See Jack v. City of Wichita*, 933 P.2d 787, 791 (Kan. Ct. App. 1997) (finding no duty where subsequently purchased land was not designated within flood zone); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 853 (5th Cir. 2000) (finding commercial activity exception to foreign sovereign immunity inapplicable).

respect to third parties." *See Morris v. McDonald's Corp.*, 650 N.E.2d 1219, 1222–23 (Ind. Ct. App. 1995); *cf. Talley v. Skelly Oil Co.*, 433 P.2d 425, 432 (Kan. 1967) ("[W]e do not, of course, imply that the rights of third parties against [defendant] would be controlled by the provisions of its lease with plaintiff."). In this way, CVR Energy may have contractually limited its liability with respect to CRRM, but "it cannot rely on that agreement to foreclose a duty to third parties." *Factory Mut. Ins. Co. v. Bobst Grp., Inc.*, 319 F.Supp.2d 880, 883 (N.D. Ill. 2004). Put simply, the Services Agreement's "exculpatory clause has no bearing on whether [CVR Energy] owed [plaintiffs] a duty in tort." *See Gibson v. Int'l Bus. Machines Corp.*, No. 1:10-cv-00330-LJM-TAB, 2010 WL 3981792, at *8 (S.D. Ind. Oct. 8, 2010); *see also Scott & Fetzer Co.*, 493 N.E.2d at 1027.

### B. Contract Construction

The CVR defendants also dispute plaintiffs' reading of the Agreement as a safety services contract. Instead, CVR characterizes it as a cost-allocation mechanism. *See* [Doc. No. 142, pp. 15–16, ¶¶ 22 –27]. That argument has some purchase. The Services Agreement does, in fact, create a *pro rata* cost sharing arrangement for personnel shared between CVR and CRRM. [Doc. No. 108-7, p. 6]. And CVR Energy officers were periodically allocated to support refining subsidiaries, including CRRM. [Doc. No. 142-7]. But the Agreement expressly provides that "[p]ersonnel performing the actual day-to-day business and operations of" CRRM "will be employed by" CRRM. [Doc. No. 108-7, p. 22]. Plaintiffs never specify the precise safety services CVR Energy agreed to provide or rendered under the contract. And deposition testimony of Christopher Swanberg—Vice President of Environmental Health and Safety at CVR Energy and CRRM—suggests CVR Energy did not conduct specific safety reviews of the

isomerization unit or pump at issue, [Doc. No. 142-8, p. 3], a fact that may speak to the parties' intent—that is, how specific or general CVR Energy's safety obligation was intended to be.

Thus, because the Services Agreement is ambiguous, genuine issues of material fact exist as to: (1) whether the parties intended the Services Agreement as a safety services contract or cost-allocation mechanism; and (2) if a safety services contract, the scope and nature of the duties owed by CVR Energy to CRRM employees. *See Spires*, 289 F. App'x at 272 (remanding, in part, because "the scope of any duty owed by [defendant] to patients in the subsidiary hospitals is unclear"). Indeed, in similar cases, the issue of duty and/or scope of duty under §324A have been determined to be issues for the jury. *See id.*; *Muniz*, 737 F.2d at 148; *cf. Smith*, 914 F.2d at 1488 (denying summary judgment for defendant where "the fact that [defendant] was providing safety advice and services could have been deduced from the evidence"); *Johnson v. Abbe Eng'g Co.*, 749 F.2d 1131, 1133–34 (5th Cir. 1984) (affirming jury finding of parent company duty where safety manager's duties "included review and approval of the broad spectrum of safety practices and procedures at . . . subsidiaries"); *Merrill ex rel. Merrill v. Arch Coal, Inc.*, 118 Fed. App'x 37, (6th Cir. 2004) (reversing grant of summary judgment where evidence gave rise to genuine dispute of fact as to the assumption of a safety duty); *Morvant v. Oil States Int'l*, 3 F.Supp.3d 561, 568–69 (E.D. La. 2014) (finding genuine issue of material fact as defendant's assumption of safety duty); *Cessna Aircraft Co. v. Metro. Topeka Airport Auth.*, 940 P.2d 84, 92 (Kan. Ct. App. 1997) (affirming denial of summary judgment where rational factfinder could determine a "duty arose out of [ ] contractual obligations").[2]

WHEREFORE, plaintiffs' Motion for Partial Summary Judgment [Doc. No. 108] is denied.

---

[2] The CVR defendants note their intent to submit a motion for summary judgment on the basis worker's compensation immunity under Kansas and Oklahoma law. [Doc. No. 142, pp. 32–38].

IT IS SO ORDERED this 23rd day of March, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT